504 So.2d 991 (1987)
STATE of Louisiana
v.
Stephen WALDER.
No. 86 KA 0517.
Court of Appeal of Louisiana, First Circuit.
March 4, 1987.
Writ Denied May 29, 1987.
*992 Joseph B. Tosterud, Asst. Dist. Atty., Covington, for appellee.
J. Kevin McNary, Ponchatoula, for appellant.
Before LOTTINGER, SHORTESS and CARTER, JJ.
CARTER, Judge.
Stephen Walder was indicted by the St. Tammany Parish grand jury and charged with aggravated rape in violation of LSA-R.S. 14:42. Defendant pled not guilty, was tried by a jury and was convicted as charged. He was subsequently sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. He has appealed, urging eight assignments of error:
1. The trial court erred in denying defendant's motion for post verdict judgment of acquittal, because of the absence of any evidence of vaginal or anal penetration of the victim.
2. The trial court erred in denying defendant's motion for post verdict judgment of acquittal, because the evidence at most supports a conviction of the lesser included offenses of forcible rape or sexual battery.
3. The trial court erred in denying defendant's motion for a new trial, because the verdict was contrary to the law and the evidence and the ends of justice require the granting of a new trial.
4. The trial court erred in denying defendant's motion for a new trial based on prejudicial errors resulting from the trial court's overruling of valid defense objections.
5. The trial court erred by overruling defendant's objection to Emile Navarre's testifying as to the mental and physical condition of the victim.
6. The trial court committed reversible error by overruling defendant's objection to the testimony of Emile Navarre, regarding a statement made to him by the victim.
7. The trial court erred by overruling defendant's objection to Barbara Guerrero's testimony, pertaining to the identity of a telephone caller.
8. The trial court erred in denying defendant's motion for new trial because defendant received ineffective assistance *993 of counsel, and the ends of justice would be served by the granting of a new trial.
Assignment of error number seven was not briefed on appeal and is, therefore, considered abandoned. Uniform Rules Courts of Appeal, Rule 2-12.4. Assignment of error eight was expressly abandoned in brief.

FACTS
The record reflects that the instant offense occurred on June 1, 1985, in St. Tammany Parish. The offense was committed during the early morning hours against a thirty-two year-old female.
The victim testified that, after leaving her place of employment on June 1, 1985, at about 11:20 p.m., she went directly to Ruby's Roadhouse in Mandeville where she had two drinks. Before finishing the second drink, she received a telephone call from her friend Michael, who invited her to his home. She accepted the invitation.
When the victim walked out of Ruby's, she proceeded to her car, got inside and started the motor. Defendant, whom she had previously seen inside Ruby's, tapped on the car window and asked for a ride home. She consistently declined to give him a ride, however, after persistent requests, she agreed to furnish him a ride home.
As the victim drove, she and her passenger engaged in conversation. Upon nearing the location where defendant claimed to reside, the victim noticed there were no houses in the immediate area and began to worry. Defendant told her to stop her car. When she stopped her car, he pulled her toward him, put a knife to her throat and told her "[y]ou're going to do everything I tell you to do or I'm going to slit your throat." At that point, the victim became very frightened and told defendant to put his knife away and she would do whatever he wanted. He told her to turn off the lights and motor, give him the keys to the car, and exit the car. She complied. While continuing to hold the knife in his hand, defendant told the victim to disrobe. The victim testified that he forced her to "give him oral sex," they had "intercourse," and the act of intercourse was completed.
Defendant suggested that they go to the victim's home. He, however, refused to allow the victim to drive or put on her clothes. Accordingly, she directed him to Lotus Road where her friend Michael lived, telling defendant that she lived there. When they arrived at Michael's house, they stopped in front. The house was well-lighted. The victim unsuccessfully tried to convince defendant that her two children might have left the lights on. She tried to get him to go inside; however, he refused and took her back to Sunset Park, where he "did it [to her] again," both inside and outside of the car.
After allowing the victim to put her clothes on, defendant took her to a motel. When they arrived at the motel, he placed his knife in the victim's face and said: "Remember this? If you say anything to that guy at the window or do anything, I'm going to hurt you and then I'm going to kill him." Defendant registered for a room, and, after he and the victim were given a room, he "did it to [her] again." The victim testified that defendant eventually left the motel room to buy cigarettes and a coke, and upon leaving, told her he would "give [her] rectal intercourse" when he returned. Defendant also told her: "Now, you be here when I get back." After he left, the victim looked for a telephone in the room. She peeked outside, through a curtain, to see if she could see defendant. She became fearful that he might be hiding outside the door. However, she decided that she had to take advantage of the opportunity at hand and ran to Emile Navarre's house, approximately two blocks away.
Emile Navarre testified that, on the day in question at about 2:45 a.m., he heard banging on his front door. He first called the police and then went to the door. A few minutes after Emile Navarre let the victim come inside his house, the police arrived.
Officers Kevin Frosch and Marco Nuzzolillo of the Mandeville Police Department went to Emile Navarre's house in response *994 to the call for police assistance. At Emile Navarre's home, the officers spoke to the victim, who gave them a report of the instant offense and a description of defendant. As a result of the report received from the victim, Officer Frosch telephoned Michael Navarre, Jr., owner of the Ozone Motel, and instructed him to secure room number two.
Michael Navarre testified that, on the date in question, he remembered defendant and a woman checking into his motel. It was the last room he had rented that morning. About an hour after the two registered, Michael Navarre received a telephone call from the police and was instructed to remain indoors. He testified that, in the meantime, defendant came and asked him whether he had seen the girl who had been with him. Navarre replied in the negative.
While en route with the victim to the police station for additional questioning, Officers Frosch and Nuzzolillo observed the defendant near the Ozone Motel. The officers transferred the victim to another police car and proceeded toward the motel. At about 3:21 a.m., defendant was seen crouching down and moving behind a mobile home behind the motel. About a minute later, Officer Nuzzolillo apprehended defendant in the motel parking lot. Officer Nuzzolillo advised defendant of his constitutional rights, placed him under arrest, and transported him to the police station. At about 3:37 a.m., defendant was positively identified by the victim. At about 3:39 a.m., Officer Nuzzolillo again advised defendant of his constitutional rights and then obtained a tape recorded statement from defendant. Among the items recovered from defendant at the time of his arrest was a pocket knife identified by the victim as resembling the knife used during the perpetration of the offense. Defendant admitted at trial that the knife belonged to him.
A transcription of defendant's tape recorded statement introduced into evidence by the state reveals that defendant admitted to having had "intercourse" with the victim at the motel, although he denied it was the result of force exerted by him. Consistent with the foregoing, at trial he admitted to having "had sex" with the victim at the motel, while maintaining that the victim consented.

ASSIGNMENTS OF ERROR NOS. 1, 2 and 3
By means of these assignments, defendant contends that the trial court erred in denying his motion for post verdict judgment of acquittal and his motion for new trial. He argues that the evidence was insufficient to prove a requisite element of aggravated rape, i.e., vaginal or anal penetration of the victim. He asserts that no evidence was ever adduced to show that sexual intercourse occurred. He argues that, at most, the evidence proved the lesser and included offense of sexual battery. He contends that an order of acquittal should be entered by this Court or, alternatively, a modified judgment of conviction of sexual battery should be entered. Further, defendant, alternatively, contends this Court should enter a modified judgment of conviction of the lesser included offense of forcible rape.
The constitutional standard for testing the sufficiency of evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. State v. Garcia, 483 So.2d 953 (La. 1986). Initially, we note that defendant's assertion in brief that the trial court erred by not granting him a new trial, on the basis that the ends of justice would be served thereby (LSA-C.Cr.P. art. 851 (5)), presents nothing for this Court to review. See State v. Savoie, 448 So.2d 129 (La.App. 1st Cir.1984), writ denied, 449 So.2d 1345 (La.1984).
In State v. Korman, 439 So.2d 1099, 1101 (La.App. 1st Cir.1983), we stated:
It is our view, and we so hold, that only the weight of the evidence can be reviewed by the trial judge in a motion for new trial under C.Cr.P. Art. 851.

*995 The trial judge can grant a new trial only if dissatisfied with the weight of the evidence, and in so determining the trial judge makes a factual review as a thirteenth juror rather than under the Jackson standard. If he grants a new trial because of the weight of the evidence, that new trial can proceed without being barred by double jeopardy. Tibbs v. Florida, [457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652, (1982)], supra. Such a determination by the trial judge is not subject to review by the appellate courts because of Louisiana Constitution Article 5, Sec. 10(B) and C.Cr.P. Art. 858.
On the other hand, if the trial judge finds the evidence legally insufficient, he must do so under C.Cr.P. Art. 821 which decision is subject to appellate review on application of the state. The trial judge cannot act as a thirteenth juror in reviewing a jury verdict under C.Cr.P. Art. 821, but must review under the much more restrictive Jackson standard.
LSA-R.S. 14:42(A) defines aggravated rape as follows:
Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
(5) When two or more offenders participated in the act.
At the time of the instant offense, LSA-R.S. 14:41 provided in pertinent part as follows:
Rape is the act of anal or vaginal sexual intercourse with a male or female person who is not the spouse of the offender, committed without the person's lawful consent.
Emission is not necessary; and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime.
Although defendant correctly asserts that the state did not introduce corroborating medical, scientific or physical evidence, the testimony of the victim is sufficient to establish the elements of the offense. See State v. Magee, 491 So.2d 454 (La.App. 1st Cir.1986); State v. Johnson, 446 So.2d 1371 (La.App. 1st Cir.1984), writ denied, 449 So.2d 1347 (La.1984). The victim testified that defendant initially forced her to have oral sex and "intercourse." She testified that he "did it" to her several other times. She further testified that, before defendant left the motel room prior to her escape, he told her he would "give [her] rectal intercourse" when he returned to the motel room. Based upon the foregoing testimony of the victim, the jury, based upon their common knowledge and understanding of human anatomy and sexuality, could rationally, and obviously did, conclude that the victim's reference to "intercourse" was to vaginal intercourse. Such a conclusion comes clearly into focus when reviewing the victim's entire testimony, in which she additionally and contrastingly testified in regard to the act of oral sex forced upon her and defendant's announced intention to force her to engage in "rectal intercourse." The victim's explicit use of the terminology "rectal intercourse" as opposed to "intercourse" served to differentiate anal and vaginal intercourse. Thus, without doubt, the jury concluded there was vaginal penetration in this case. Cf. State v. Robertson, 454 So.2d 205 (La. App. 1st Cir.1984), writ denied, 458 So.2d 487 (La.1984). Moreover, we note that, in his statement to the police following his arrest, defendant admitted to having had "intercourse" with the victim and, in his trial testimony, he again admitted to having "had sex" with her. In both the statement and trial testimony, defendant maintained *996 that the victim's participation was of a consensual nature.
Contrary to defendant's assertion in brief, the victim's testimony shows that defendant was armed with a dangerous weapon, a pocket knife, and threatened to slit her throat if she did not submit to him. Thus, the victim was prevented from resisting the act because defendant was armed with a dangerous weapon and/or because of his threats of great and immediate bodily harm, accompanied by the apparent power of execution. See LSA-R.S. 14:42(A)(2) and (3).
The jury's verdict indicates that they accepted the victim's testimony as more credible than that of defendant. The trier of fact may accept or reject, in whole or in part the testimony of any witness. State v. Mullins, 464 So.2d 459 (La.App. 1st Cir. 1985). Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Hence, the trial court properly denied defendant's motion for post verdict judgment of acquittal.
These assignments are without merit.

ASSIGNMENTS OF ERROR NOS. 4, 5 and 6
By means of these assignments, defendant contends that the trial court erred in denying his motion for new trial based upon the trial court's overruling defendant's objections to Emile Navarre's testimony in regard to (1) the victim's mental and physical condition and (2) statements made to him by the victim.
Defendant argues that Emile Navarre, as a lay witness, improperly gave opinion evidence in regard to the victim's mental and physical condition. He argues that Emile Navarre's recounting of the victim's statement pertaining to the instant offense constituted hearsay. Defendant additionally argues that the recounting of the victim's statement does not fall within the "first report of a rape victim" exception to the hearsay rule. He contends that that exception applies only to "young victims" and not to adults.

VICTIM'S CONDITION
During Emile Navarre's direct examination, the prosecutor asked the witness about the victim's condition when he let her into his home on the morning of the alleged rape. Thereupon, defense counsel objected to the question on the ground that it called for a conclusion on the part of the witness. After the trial court overruled the objection, the prosecutor rephrased his question and asked: "How did she appear to you?" The witness answered: "She appeared very, very nervous."
Generally a lay witness can only testify to the facts within his knowledge and not to impressions or opinions; however, a witness is permitted to draw reasonable inferences from his personal observations. State v. Alexander, 430 So.2d 621 (La.1983). We find that the witness's testimony regarding the nervousness of the victim amounted to nothing more than natural inference based upon his personal observations of the victim at the time. Hence, the witness was properly permitted to give the testimony regarding the apparent nervousness of the victim.

VICTIM'S STATEMENTS
Also during Emile Navarre's direct examination, the following exchange occurred:
Q. Did you speak to her about the incident?
A. Briefly, yes, sir.
Q. And what did she relate to you?
BY [defense counsel] MR. SLOAN: I object, Your Honor. It's hearsay.
BY [prosecutor] MR. TOSTERUD: Your Honor, as I understand it, the first person the victim would relate the facts to of a sexual offense is not hearsay but is an exception.
BY MR. SLOAN: I'm not aware of such an exception.
BY THE COURT: I'm going to overrule your objection.
BY THE WITNESS: What she had told me when she entered the house *997 was that she had been raped at the motel and I was the nearest person she could think of running to. She said the gentleman had left to go get some beer, and that when he left, she ran out of the motel and ran to my house.
In State v. Middlebrook, 409 So.2d 588, 590 (La.1982), the Louisiana Supreme Court stated the following:
This court has long recognized an exception to the hearsay rule allowing admission of the early complaints of rape victims. At times, the court has characterized these as the `first complaints of rape victims' constituting res gestae exceptions to the hearsay rule. See State v. Adams, 394 So.2d 1204 (La.1981); State v. Brown, 302 So.2d 290 (La.1974). In other cases, the court has referred to such statements simply as `early complaints of rape victims' and ruled that they were admissable as such. See State v. Hatcher, 372 So.2d 1024 (La.1979); State v. Elzie, 351 So.2d 1174 (La.1977). When there is no unexplained lapse of time between the rape and the victim's complaint, and when the utterance is spontaneous, the person to whom the complaint was made is allowed to repeat the complaint in court.
Defendant's assertion that the above exception to the hearsay rule is inapplicable to adult rape victims is erroneous. See State v. Middlebrook, supra; State v. Elzie, 351 So.2d 1174 (La.1977). The evidence establishes that the victim accomplished her escape from defendant by running directly from the Ozone Motel to Emile Navarre's house, located approximately two blocks from the motel. Upon reaching Navarre's home, the victim began banging on his door and screaming to come inside. After entry was granted, she disclosed that she had been raped and that Navarre's house was the nearest place she thought of seeking refuge. Under these circumstances, Emile Navarre's testimony disclosing the victim's statement, which was made under the pressure of the rape and very soon after its occurrence, was properly admitted into evidence.
Accordingly, there is no merit to these assignments.

CONCLUSION
For the above reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
SHORTESS, J., concurs in the result, notwithstanding my concern over the puzzling paucity of defense cross-examination of prosecution witnesses, because from the record I cannot say that the Jackson v. Virginia standard has been violated.