532 So.2d 541 (1988)
STATE of Louisiana
v.
Lionel WORTHY.
No. 87 KA 1831.
Court of Appeal of Louisiana, First Circuit.
October 12, 1988.
*543 Bryan Bush, Dist. Atty., Baton Rouge, by Sue Bernie, Asst. Dist. Atty., for plaintiff/appellee.
Office of the Public Defender, Baton Rouge, for defendant/appellant.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
SAVOIE, Judge.
Lionel Worthy was indicted by the East Baton Rouge Parish Grand Jury for aggravated rape, a violation of La.R.S. 14:42. A jury convicted him as charged; and, thereafter, the trial court imposed the mandatory sentence of life imprisonment, without benefit of probation, parole or suspension of sentence. Defendant appealed, urging twelve assignments of error and briefing eleven in nine arguments.[1] Assignments of error not briefed on appeal are considered abandoned. Uniform Rules Courts of Appeal, Rule 2-12.4.

FACTS
Defendant was charged with the rape of an eighty-seven year old woman. The victim was abducted on February 13, 1987, as she walked along a downtown Baton Rouge Street at approximately 7:00 a.m. Defendant dragged her down the street, forced her into a car, and drove her to a house under construction in a subdivision several miles away. Defendant carried the victim into a storage room attached to the house and raped her. Before he left, he stripped several rings off of her hands.
The victim was discovered a short time later by Carl Hughes, who was awaiting the arrival of his son, one of the contractors working on the unfinished house. Mr. Hughes had arranged to meet his son at the house that morning to assist him. He entered the utility room to look for a lighting fixture. As he opened the door, he heard someone ask for help. He discovered the victim, semi-prone, attempting to dress herself. The victim told Mr. Hughes that she had been raped by a black male. Mr. Hughes assisted the victim. Then, at her request, he drove her to her home downtown.
The victim, who was severely bruised and bleeding extensively, was given emergency medical treatment at her apartment *544 before she was transported to Baton Rouge General Hospital. A rape examination was performed at the hospital. The victim was later transferred to Woman's Hospital for further gynecological treatment.
The victim told investigating officers that she had been abducted in a fairly new, red car. Two days later, a 1982 model red car was discovered parked illegally in the parking lot of the Centroplex in downtown Baton Rouge. An investigation revealed that the car had been stolen several days earlier in Plaquemine, Louisiana. After the owners retrieved their property, they discovered gray hair, cigarette ashes, and blood smears inside the car.
Defendant was originally arrested in connection with an unrelated offense. In the course of that investigation, defendant's uncle, Gerald Luke, told Det. Dotson of the Plaquemine City Police that, since defendant had moved into the house several months earlier, he had discovered several items of suspicious origin in his home. He turned over a ring that defendant had given to his wife, Catherine Luke. When questioned about the ring, defendant initially responded that he had purchased it from a friend in Dallas, Texas. After further questioning, defendant confessed to the rape of the victim. He further admitted that he had taken the victim's rings and stolen the car used in the abduction.
DENIAL OF MOTION TO SUPPRESS
By assignment of error number two, defendant submits that the trial court erred by denying the motion to suppress his confession. He claims that the state failed to prove the confession was voluntary and not influenced by inducements and promises. Specifically, defendant contends that the statement was involuntary because of the denial of his requests, made several times during the questioning, that an attorney be provided.
Before a statement can be admitted into evidence, the state must prove that it was freely and voluntarily made. La.R.S. 15:451. If a statement was made during custodial interrogation, the state must also show that the defendant was advised of his Miranda rights before making the statement. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966). If the defendant alleges police misconduct in reference to the statement, it is incumbent upon the state to rebut these allegations specifically. State v. Brooks, 505 So.2d 714 (La.), cert. denied, ___ U.S. ___, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987). However, the admissibility of a confession is in the first instance a question for the trial judge and his conclusions on the credibility and weight of the testimony relating to the voluntary nature of the statement will not be overturned unless they are not supported by the evidence. Id.
During the taped statement, Det. Bates advised defendant of his constitutional rights, including his right to counsel. He also advised defendant that the interrogators had no way of furnishing defendant with an attorney at that time, but an attorney would be appointed for him if he desired. However, if defendant elected to answer questions without the presence of an attorney, he had the right to stop the questioning at any time, and he had the right to stop the questioning until he had talked to an attorney. Defendant contends that the statement, "We have no way of furnishing you with an attorney, but one will be furnished to you if you wish," shows that the law enforcement officers would not allow him to consult with an attorney at that time and does not suggest the procedure for the defendant to consult with an attorney.
In State v. Sterling, 377 So.2d 58 (La. 1979), the defendant contested the sufficiency of the Miranda warnings in use by the sheriff's office. Therein, the defendant was advised that, "We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court." The Louisiana Supreme Court noted that, taken in isolation, that language might instill doubt that the defendant was fairly advised of his rights and the defendant might have gained the impression that a lawyer could not be furnished to him until he appeared in court. The court determined that, in the full context *545 of the warning and coupled with the full and adequate warnings he received before confessing to the offense, it could not be logically concluded that the defendant was unaware of his right to refuse to make any statement without the benefit of a lawyer.
We find no merit to defendant's claim that the warnings provided by Det. Bates were deficient. Defendant was clearly advised of his right to counsel and that an attorney would be appointed for him if he could not afford to retain counsel. He was also clearly advised that, if he elected to answer questions without an attorney, he could stop the interrogation at any time and refuse to answer further questions until he had talked to an attorney. In the full context of the warnings given to defendant before he made the statement, it could not be concluded that defendant's confession was coerced because he was unaware of his right to counsel.
Defendant further contends that his confession was involuntary because he was questioned continuously for approximately three hours, during which time he clearly indicated his desire that the officers stop questioning him.[2] Defendant submits that the testimony adduced during the hearing on the motion to suppress shows incontrovertibly that he requested the interrogation be ceased.
To establish the foundation for the admissibility of defendant's confession, the state presented the testimony of Det. Dotson of the Plaquemine City Police and Det. Bates of the Baton Rouge City Police. Det. Dotson related that he transported defendant from Marksville, Louisiana, where defendant was under arrest for another offense, to Plaquemine. Det. Dotson testified that he advised defendant of his rights when defendant entered the car before the trip to Plaquemine and again when they arrived in Plaquemine, at which time defendant signed a written waiver of rights form. At that time, defendant denied knowledge of any type of criminal activity.
According to the testimony of Det. Dotson, after being confronted with evidence from an unrelated offense and advised that his uncle had turned it over to the police, defendant told Det. Dotson that he did not want to talk to him. Det. Dotson then left the interrogation room, and Deputies Marionneaux and Engolio continued questioning defendant. Det. Dotson continued to monitor the conversation from an observation room adjacent to the interrogation room. He testified that he did not hear defendant request an attorney or ask that the questioning be stopped.
Det. Bates testified that he interviewed defendant in the Iberville Parish Sheriff's Office. Det. Bates related that he was introduced to defendant in the interrogation room, that he advised defendant that he was with the sex crimes division of the Baton Rouge City Police, and that he told defendant he wanted to question him about a case on which he was working. Det. Bates testified that, although the deputies told him that defendant had been advised of his constitutional rights, before beginning the interview he again instructed defendant about his rights related to questioning.
Det. Bates specifically testified that defendant indicated that he understood those rights. Det. Bates denied that defendant requested the opportunity to speak with an attorney and denied that he promised or coerced defendant in any way. Defendant spoke briefly to Det. Bates; however, he later told Det. Bates that he did not wish to speak to him. Det. Bates left the room. Shortly thereafter, Deputy Marionneaux notified him that defendant wished to speak to him; and Det. Bates reentered the room. After a general discussion, Det. Bates showed defendant the right that defendant's uncle had turned over to Det. Dotson. Defendant had initially stated that he purchased the ring from a friend in Dallas, Texas. When Det. Bates asked him for corroborating details, defendant began *546 to cry. He told Det. Bates that the ring came from the lady in Baton Rouge.
Det. Bates continued to question defendant and asked if he would make a taped statement. Defendant stated that he would cooperate. Det. Bates asked Deputy Marionneaux to return to the room, and defendant's statement was taped. Det. Bates specifically denied that he promised defendant anything in order to obtain the statement. He further denied that he touched defendant during the interview.
Defendant testified on his own behalf and related a different series of events. He claimed that Det. Dotson threatened to arrest defendant's father, recently released from the hospital, if defendant did not tell them what they wanted to hear. Defendant testified that he asked Det. Dotson to leave the room after this threat, and Det. Dotson did so.
Defendant further claimed that, upon arrival, Det. Bates asked the other law enforcement officers to leave the room. Thereafter, he showed defendant a photographic lineup which included defendant's photograph, circled and labelled. After he showed defendant the array, Det. Bates grabbed defendant's hands and started rubbing the palms together, commenting on how sweaty defendant's hands were. A short time later, the other officers returned to the room, and Det. Bates voluntarily left.
Defendant testified that, while Det. Bates was out of the room, Deputy Engolio stated that Det. Bates had gone to call the district attorney of East Baton Rouge Parish. When defendant still refused to talk, Deputy Engolio also left the room. Det. Bates then reentered the room and told defendant that he intended to obtain the information he sought. He also told defendant that aggravated rape was a capital offense. Defendant again refused to make a statement. Det. Bates left again, and Deputies Marionneaux and Engolio reentered the room. One of the two men told defendant he would be charged only with the theft of the car if he gave a statement to Det. Bates.
Defendant testified further that Det. Bates again reentered the room and asked him whether or not he wished to make a statement. Defendant told him that he did not wish to speak to them without an attorney. Det. Bates then told defendant that he intended to get a statement and that, if defendant did not do so immediately, he would return to Baton Rouge. He emphasized that defendant could "fry" for the offense. Defendant then agreed to make a statement.
On rebuttal, the state presented the testimony of Deputy Marionneaux. Deputy Marionneaux testified that he was present during most of the interrogation and that defendant did not request that he be allowed to consult an attorney. He further testified that, during the time periods when he was not present in the interrogation room, he monitored the questioning from an adjacent room, from which he could see and hear what took place in the interrogation, and that defendant did not request an attorney. Deputy Marionneaux also denied that defendant's parents were threatened, that Det. Bates offered to telephone the East Baton Rouge Parish District Attorney, or that defendant was told that aggravated rape was a capital crime and that defendant could "fry" for it. Deputy Marionneaux further testified that neither he nor Deputy Engolio offered to charge defendant only with the theft of an automobile if he would talk to Det. Bates, and that he did not see Det. Bates rub defendant's hands together.
Herein, the state presented evidence that defendant's confession was voluntary and not the result of threats, coercion, or inducements. Defendant's claims of police mistreatment were each rebutted specifically. Therefore, the trial court was faced with contradictory testimony which calls for a determination of the credibility of the witnesses. Such a determination is within the sound discretion of the trial court and is entitled to great weight and will not be disturbed unless clearly contrary to the evidence. State v. Vessell, 450 So.2d 938, 943 (La.1984). We find no error in the trial court's denial of defendant's motion to suppress the confession.

*547 DENIAL OF MOTIONS TO EXCLUDE
By assignments of error three and four, defendant submits that the trial court erred by denying his motions to exclude testimony and photographs of items connected with the instant offense. In assignment of error number three, defendant argues the court erred by refusing to exclude testimony pertaining to the automobile in which the victim was abducted, as well as photographs of that car. In assignment of error number four, defendant contends the court erred by refusing to exclude testimony concerning and photographs of a drop cloth found in the utility room on which human blood was detected.
Defendant claims that evidence concerning the red car was irrelevant because the car was not sufficiently identified as being the vehicle in which the victim was abducted and, further, that evidence concerning the car was not material to establishing the elements of aggravated rape. Defendant also contends that testimony about the car was presented only so that the state could introduce evidence that defendant had stolen the car in Plaquemine. Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent. La.R.S. 15:441. The relevancy of evidence is determined by the purpose for which it is offered. La.R.S. 15:442. Any evidence, whether direct or circumstantial, is relevant if it tends to prove or disprove the existence of any material fact. State v. Patch, 470 So.2d 585 (La.App. 1st Cir.), writ denied, 475 So.2d 358 (La.1985).
The trial court has wide discretion in determining the relevancy of evidence, and its discretion will not be overturned absent a clear abuse of discretion. State v. Albert, 430 So.2d 1279 (La.App. 1st Cir.), writ denied, 433 So.2d 711 (La.1983). The trial court did not err in determining that evidence of the vehicle was admissible.
The victim testified that she was dragged down the street, forced into a car, driven to another location, and brutally raped. In defendant's taped confession, he claimed that the victim climbed into the car without physical mistreatment and that she later voluntarily removed her clothing, in effect consenting to intercourse. The smears of blood inside the car evidenced the victim's struggle to resist her captor and bolstered her credibility. This evidence was relevant to illustrate the degree of force used by the accused, as well as the resistance of the victim; and these issues are material to the elements of aggravated rape. We find, therefore, that the trial court did not err by refusing to exclude testimony concerning the vehicle used by defendant to abduct the victim.
The use of photographs as graphic portrayals of oral testimony has long been recognized. A photograph becomes admissible when a witness has testified that it is an accurate representation of what was personally observed by that witness. State v. Moore, 419 So.2d 963 (La.1982); State v. Kirkley, 470 So.2d 1001 (La.App. 1st Cir.), writs denied, 473 So.2d 61 and 475 So.2d 1105 (La.1985), cert. denied, 474 U.S. 1061, 106 S.Ct. 808, 88 L.Ed.2d 783 (1986). Photographs have been held admissible to establish the connexity between the evidence and the facts of the case at issue. The test of admissibility is whether or not the probative value of the photograph outweighs any possible prejudice which might result from its display to the jury. State v. Kirkley, supra.
The victim was shown a photograph of the car during her testimony. She identified the subject of the photograph as the car in which she was abducted. The owner of the car, Marsha O'Neal, positively identified the photograph as a likeness of her car, which she reported stolen on Friday, February 13, 1987, and retrieved from Baton Rouge on Sunday, February 15, 1987. Ms. O'Neal further testified that she notified the Plaquemine City Police after discovering what appeared to be blood stains in the car. In his taped confession, defendant related that he stole a car of the same color, style, and make as Ms. O'Neal's car and that he abducted the victim in that car. We find, therefore, that the state established the photograph of the vehicle as an accurate representation of the car seen by *548 the victim and, therefore, the materiality of the evidence of the car was established.
Although the connexity of the car to the charge of aggravated rape was established, the photographs of the car were admissible only if their probative value outweighed the prejudicial effect of their display to the jury. Herein, we find no manner in which defendant was prejudiced by the admission of the photographs. Some of the photographs illustrated smears of blood inside the car; however, these pictures were not unduly gruesome. The other photographs simply illustrated the model and color of the vehicle. Therefore, we find the court did not err by refusing to exclude the photographs.
Defendant further contends that the trial court erred by failing to exclude photographs of a drop cloth that was found in the utility room on which human blood was detected.[3] Defendant submits the photographs were not admissible because the connection of the cloth to the incident was not established, the blood on the cloth was not determined to be that of the victim and, therefore, the prejudicial effect of the photographs outweighed any probative weight.
The victim testified that she was raped on some shingles that had "an old rough thing" over it. Some of the photographs of the utility room showed a pile of shingles covered with the cloth. The photographs indicated that the cloth previously had been used to protect against paint splatters because numerous stains of various colors are apparent on the cloth. Although there are a few stains of a reddish color, it is difficult to determine from the photographs if the stains are blood or paint. We find, therefore, that the victim's testimony sufficiently established the connexity of the cloth to the instant offense, and the photographs were relevant to corroborate her knowledge of the room where she claimed the offense occurred. The photographs are not gruesome; and, therefore, we find that the probative worth of the pictures outweighed any prejudicial effect. The trial court did not err by refusing to exclude the photographs of the drop cloth.

DENIAL OF MOTION FOR SUBPOENAS
By assignment of error number five, defendant submits that the trial court erred by denying his motion for a subpoena. Defendant acknowledged that he received a copy of the report prepared by the doctor who performed the rape examination, in which the doctor stated that penetration had occurred. However, apparently due to the extensive internal injuries suffered by the victim, the physician also performed a complete gynecological examination and subsequently referred the victim to a gynecologist for treatment. Defendant subpoenaed the records of the gynecological examination performed by the first doctor. He contends that he was entitled to the records because the rape report indicated that neither seminal fluid nor spermatozoa were detected in the vaginal vault. Therefore, he questioned the doctor's finding that penetration had occurred; and the gynecological report was necessary to assist in his cross-examination. The state objected to the subpoena on the grounds that the state did not intend to introduce the report at trial and that the disclosure of the gynecological report would breach the victim's confidence. The state also argued that the doctor who performed the rape examination was subpoenaed to testify at trial, and defendant could cross-examine the doctor to determine the basis of his opinion that penetration had occurred.
The record does not reflect the grounds upon which the court determined that defendant was not entitled to the subpoena. Defendant contends that the subpoena was neither unreasonable nor oppressive and the information he sought was relevant to the issue of penetration, an essential element of the offense of aggravated rape.
*549 He submits, therefore, that the court did not have the discretion to refuse to issue the subpoena for the victim's medical records.
La.C.Cr.P. art. 731 provides in part that "[t]he court shall issue subpoenas for the compulsory attendance of witnesses at hearings or trials when requested to do so by the state or the defendant." La.C.Cr.P. art. 732 further provides that "... the court shall vacate or modify the subpoena if it is unreasonable or oppressive."
The record does not reflect the date upon which defendant requested the issuance of the subpoena for the victim's medical records.[4] However, the court conducted a hearing and denied defendant's motion on June 8, 1987, just before jury selection began. Therefore, even if defendant did not move for the subpoena until that date, it does not appear that his request for the production of the single document was oppressive. Moreover, in light of defendant's specific claims that he needed the report to assist in his cross-examination of the doctor, his request does not appear to be unreasonable. Thus, if the trial court refused to honor defendant's request for a subpoena on the grounds that the request was unreasonable or oppressive, that ruling was improper.
There appears to be no satisfactory reason why defendant was denied the request for the subpoena. Nevertheless, the doctor who performed the examination testified that penetration occurred and provided the medical basis for his conclusion. The doctor was thoroughly cross-examined by defense counsel about the results of the examination and the reports prepared by him. Consequently defendant suffered no prejudice from the failure to obtain the medical report. See State v. O'Quinn, 342 So.2d 202, 208 (La.1977).

OBJECTION TO HEARSAY TESTIMONY
By assignment of error number six, defendant contends the trial court erred by sustaining the state's objection to a question through which defendant attempted to obtain the victim's description of her assailant. The state objected on the grounds that the question was hearsay because the witness had not learned the description from the victim.
Sgt. Ginn testified on behalf of the state and related that he had obtained a statement from the victim. On cross-examination, defendant asked Sgt. Ginn whether or not the victim had described a suspect and, if so, what that description was. Sgt. Ginn reviewed his report. He then testified that the victim described the assailant as a black male who stood approximately five feet eleven inches tall, weighed approximately one hundred fifty pounds, and wore old work gloves.
Det. Bates later testified for the state. On cross-examination, defendant asked him whether or not he reviewed the report prepared by Sgt. Ginn. Det. Bates testified that he vaguely recalled the details of the report. When defense counsel asked Det. Bates what description the victim had given Sgt. Ginn, the state objected on the grounds that the description was hearsay. Defendant contended the description was offered to show that a description was made and was not hearsay because it was not offered to prove the truth of the description.
Defendant contends the court erred by sustaining the state's objection because he became aware that two photographic lineups were presented to the victim through the testimony of this witness. However, defendant does not set forth any manner in which Det. Bates's recollection of the description provided to another officer is related to the photographic lineup. The testimony of Sgt. Ginn established that the victim gave a description of the rapist. Det. Bates's testimony concerning his vague recollection of the description the *550 victim gave to Sgt. Ginn was properly excluded.
ADMISSIBILITY OF EVIDENCE
By assignments of error seven and eight, defendant contends the trial court erred by overruling his objection to the introduction of two state exhibits. In assignment of error number seven, defendant submits the court erred by permitting the state to introduce a ring that belonged to the victim. In assignment of error number eight, defendant argues the court erred by permitting the state to introduce evidence collected from the car stolen from Marsha O'Neal.
To admit demonstrative evidence at trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case. State v. Sweeney, 443 So.2d 522 (La.1983). In order to introduce demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is the one connected with the case. State v. Taylor, 422 So.2d 109, 115 (La.1982), cert. den. 460 U.S. 1103, 103 S.Ct. 1803, 76 L.Ed.2d 367 (1983).
Defendant claims the ring was not admissible because it was not sufficiently identified as the property of the victim and because the exact time and date that the ring was in defendant's possession was not established. However, the victim positively testified that the ring belonged to her and that it was taken from her by the rapist after the rape. Defendant's aunt, Catherine Luke, identified the ring as one that defendant had given to her. Defendant's uncle, Gerald Luke, testified the ring appeared to be the same ring that he turned over to Det. Dotson. In defendant's taped statement, he claimed that he took the victim's rings after he raped her. He described the ring that he took, and that description matched the appearance of the ring identified by the victim.
In light of the testimony of the witnesses, particularly the positive identification of the ring by the victim, as well as defendant's confession, defendant's claim that the ring was not sufficiently identified is without merit. In any event, the lack of positive identification goes to the weight of the evidence, rather than to its admissibility. State v. Taylor, supra at 115. The trial court did not err by overruling defendant's objection to the admission of the ring based on the lack of positive identification.
Defendant further contends the trial court erred by overruling his objection to the admissibility of evidence collected from Marsha O'Neal's car (hair, blood, and fingerprints) because the state failed to establish the connexity of that car. However, the victim identified a photograph of the car as the vehicle used by her assailant. Defendant admitted that he stole a car of a similar make and model and was driving that car when the victim allegedly agreed to accompany him. Ms. O'Neal testified that she discovered her car was stolen on Friday, February 13, 1987, and it was located in Baton Rouge on February 15, 1987. The rape occurred February 13, 1987. Forensic evidence established that the gray hair could have been that of the victim and that the stains found in the car consisted of human blood. We find, therefore, that the state established that the car and the evidence removed from it were, more probably than not, connected with the case. Any deficiency in the identification relates to the weight of the evidence, not its admissibility. State v. Taylor, supra. Ultimately, connexity of the physical evidence is a factual matter for determination by the jury. State v. Pittman, 486 So.2d 895 (La.App. 1st Cir.1986). The trial court did not err by overruling defendant's objection to the introduction of the exhibits.
FAILURE TO DISCLOSE IDENTIFICATION EVIDENCE
By assignment of error number nine, defendant submits that the trial court erred by denying his motion for a mistrial based on the state's failure to fully comply with a request for discovery. By assignment of error number twelve, defendant contends the court erred by denying his motion for a new trial, based on the same discovery violation.
*551 Defendant filed a pre-trial motion for discovery in which he requested the state to furnish all exculpatory evidence, whether or not it was intended for use at trial. He claims the state's failure to notify him that the victim was shown a photographic array and was not able to identify a suspect constituted an exculpatory fact. Defendant's photograph was not included in this photographic array. The state did notify defendant that the victim was unable to identify him from a photographic array in which his photograph was displayed.
Defendant submits that the information was exculpatory and critical because the victim tentatively identified a suspect from the first lineup she was shown. However, Det. Bates testified that, when he showed the victim a working lineup while she was hospitalized, the victim was unable to make a positive identification. The only identification made by the victim from the first lineup was a statement that one of the photographs resembled the man who attacked her. Detective Bates further testified that he showed the victim a lineup in which defendant's photograph appeared approximately one week later; however, the victim was unable to identify her assailant from that lineup.
The victim's failure to identify a suspect from a lineup in which defendant's photograph did not appear is not particularly helpful to the defense. Rather, the existence of such evidence is essentially neutral.
Moreover, even if the evidence could be considered exculpatory, not all cases involving the late disclosure of exculpatory evidence result in reversible error. State v. Wright, 441 So.2d 1301, 1305 (La.App. 1st Cir.1983). On appeal, this Court will review the record to determine whether or not any prejudice which may have resulted from the noncompliance caused the trier of fact to reach the wrong conclusion. Id. Herein, although defendant claimed the victim mistakenly identified him, the state did not attempt to prove defendant's identity through the victim's testimony but relied instead upon the defendant's confession to the crime and circumstantial evidence (including defendant's possession of the victim's jewelry days after the offense) to provide defendant's identity as the rapist. The only identification of defendant by the victim occurred during cross-examination by the defense, when the victim testified that defendant resembled her attacker. We find, therefore, that the late disclosure of the existence of the first photographic array, even if the evidence could be considered exculpatory, could not have caused the trier of fact to reach the wrong conclusion. We find no error in the trial court's denial of defendant's motion for a mistrial urged after the existence of the lineup was disclosed.
Defendant also moved for a new trial, urging in part that he was denied a fair trial because he was unaware of the existence of this exculpatory evidence. He contends he was prejudiced by the disclosure of the first lineup and that, if he had known of its existence before trial, he would have moved to suppress evidence of that array.
Defendant's claims that the evidence is both exculpatory and prejudicial are seemingly contradictory. Moreover, defendant does not set forth a basis for his claim that he was entitled to suppression of the evidence; nor are any grounds apparent to this Court. A defendant attempting to suppress an identification must prove: (1) that the identification was suggestive; and (2) that there was a likelihood of incorrect identification in the identification procedure. State v. Lucky, 453 So.2d 1234, 1238 (La.App. 1st Cir.), writ not considered, 459 So.2d 529 (La.1984). A lineup is unduly suggestive if the identification procedure displays the defendant so that the witness's attention is focused on the defendant. State v. Nathan, 444 So.2d 231, 235 (La. App. 1st Cir.1983), writ denied, 445 So.2d 1232 (La.1984). Herein, defendant's photograph was not included in the display shown to the victim; thus, defendant was not entitled to suppression of the photographic lineup on the grounds that the identification procedures were unduly suggestive, particularly in light of the fact that the victim did not positively identify a suspect. This assignment of error has no merit.
*552 EXCLUSION OF JURORS ON RACIAL GROUNDS
By assignment of error number ten, defendant complains that the trial court failed to sustain his objection to the state's use of its peremptory challenges to excuse prospective jurors solely on the basis of their race, in violation of the holding of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In Batson, the United States Supreme Court held that the Equal Protection Clause forbids the state from using its peremptory challenges to strike potential jurors of the defendant's race solely on account of their race or on the assumption that jurors of the defendant's race will be unable to impartially consider the state's case against the defendant.
In raising a Batson claim, the defendant must show that: (1) he is a member of a cognizable racial group, (2) the prosecutor has exercised peremptory challenges toward the elimination of venire members of his race, and (3) the facts and circumstances infer that the prosecutor used his peremptory challenges for the purpose of striking minorities. A defendant makes a prima facie showing of discrimination by showing the above three factors and thereby compels the state to come forward with a neutral explanation for challenging black jurors. Batson, 106 S.Ct. at 1723.
Defendant was convicted by a jury comprised of twelve persons, ten of whom were white and two were black. The alternate juror was also black. Of the jurors excused by the state's peremptory challenges, the state offered its grounds for excusing six black members of the venire. On appeal, defendant specifically challenges the reasons offered for only two of the six prospective jurors. Defendant also generally contends the state's challenges were improper because the reasons advanced by the state suggest that the prosecutrix challenged the jurors because she believed they would not have convicted the defendant based on the evidence.
Initially, we note that defendant's implication that a prosecutor cannot challenge jurors who would not analyze the evidence presented by the state and vote to convict the accused accordingly is without merit. "A juror shall be sworn to try the case in a just and impartial manner, to the best of his judgment, and to render a verdict according to the law and the evidence." La. C.Cr.P. art. 790. Either the state or the defendant may challenge a juror for cause on the ground that the juror will not accept the law as given to him by the court. La.C. Cr.P. art. 797(4). Thus, the state may properly challenge a juror who would not convict an accused based on the evidence.
Defendant contends the state improperly challenged Mr. Joseph Wilbert and Ms. Bessie Howard. The assistant district attorney provided her grounds for the challenges to the court. She noted that she had excused Mr. Wilbert in part out of courtesy because he indicated that he had a doctor's appointment scheduled during the week. The prosecutrix advised the court that she was concerned that Mr. Wilbert might not be fully attentive. During the voir dire, Mr. Wilbert testified that he had recently undergone surgery and had scheduled a follow-up examination with the doctor later in the week. Mr. Wilbert testified that this appointment "would be on my mind." Mr. Wilbert's responses to the court's inquiries about his concerns for this appointment were somewhat equivocal. The court asked him if he thought the conflict might cause him an inconvenience and if he thought he would be unable to sit on the jury because of the conflicting medical appointment. Mr. Wilbert responded, "No, I don't think so." The court then asked Mr. Wilbert if he would have a problem participating on the jury; and Mr. Wilbert again responded, "No, I don't think so." It appears, therefore, that Mr. Wilbert's ambiguous responses resulted in the assistant district attorney's opinion that he might be distracted by the surgery and follow-up medical care; and the challenge was not based on racial grounds.
The prosecutrix advised the court that she challenged Ms. Howard because Ms. Howard's answers and demeanor suggested that she would have problems with the mandatory life sentence for aggravated *553 rape and that she was very hesitant about the idea of a life sentence. The record reflects that, during the voir dire, Ms. Howard testified that she believed the sentence could be "a little lighter" than a life sentence for aggravated rape and that the fact that a life sentence was involved "probably" would influence her deliberations. Thereafter, the state asked Ms. Howard, "Would you require more of the state because its a life sentence? Would you vote guilty even knowing that it carried a mandatory life sentence?" Ms. Howard responded, "Yes." From the state's questions, it is difficult to determine whether or not Ms. Howard intended to testify that she would require more of the state because the penalty for aggravated rape is life imprisonment or if she would vote to convict although the penalty for aggravated rape is life imprisonment. We note, however, that Ms. Howard's indications that she might require stronger evidence from the state because of her opinion that a life sentence was too long support the state's challenge on racially neutral grounds.
In his brief, defendant set forth the state's explanation for the challenge of four other veniremen. However, defendant did not contest those grounds. Nevertheless, we note that, in each case, the state offered racially neutral explanations for the challenge of the juror.
The reasons set forth by the state, supported by the record, reflect that one of the jurors, Joann Quincy, testified that she knew of an occasion where two police officers had lied. One of the jurors, Emma Anderson, indicated she would be unable to concentrate on the evidence because of the recent deaths of two of her grandchildren. The third juror, Anthony Alexander, carried a Bible during voir dire. The prosecutrix stated that she excused him because she was concerned that his religious attitudes might affect his deliberations. The final juror, Mary Stewart, testified that she might require a higher standard of proof because a life sentence was possible.
We find, therefore, that the questions and statements of the prosecutrix during voir dire and the hearing on defendant's motion for a mistrial refute an inference of discriminatory purpose. See Batson, 106 S.Ct. at 1723. The state offered credible reasons for the exercise of its peremptory challenges that were racially neutral. We note that, at the conclusion of the voir dire, the state had peremptory challenges remaining to exclude blacks, had discrimination been the purpose; nevertheless, three jurors (two of whom actually served on the jury and the alternate) were black. See State v. Carter, 522 So.2d 1100, 1105 (La. App. 1st Cir.1988). This assignment of error has no merit.
SUFFICIENCY OF THE EVIDENCE
By assignment of error number eleven, defendant submits that the trial court erred by denying his motion for a post-verdict judgment of acquittal. Defendant contends the state failed to prove his identity as the rapist. He further contends that the state failed to prove that the offender accomplished the rape through the use of threats, force or physical violence and that penetration was not established.
The standard of review for the sufficiency of the evidence is whether or not any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could conclude that the state proved each element beyond a reasonable doubt. La.C.Cr.P. art. 821; State v. Nealy, 450 So.2d 634 (La.1984). Where the key issue is defendant's identity as the perpetrator, rather than whether or not the crime was committed, the state is required to negate any reasonable probability of incorrect identification. State v. Richardson, 459 So.2d 31 (La.App. 1st Cir.1984).
Defendant's identity as the perpetrator was established through his own confession. Although a defendant may not be convicted on his confession alone, without proof that a crime has been committed, once the corpus delicti has been established, a confession can be used to establish the elements of the offense or the identity of the perpetrator. See State v. Celestine, 452 So.2d 676 (La.1984). The victim's testimony alone is sufficient to establish the elements of the offense. State v. Walder, 504 So.2d 991 (La.App. 1st Cir.), writ denied, 506 So.2d 1223 (La.1987).
*554 Herein, the victim testified that she was raped by the man who abducted her from a downtown Baton Rouge street. She further testified that the man beat her and threatened to kill her as she attempted to call for help. Defendant confessed that he abducted, raped, and robbed an elderly woman that he saw walking in downtown Baton Rouge. Dr. Howard Newman, the physician who examined the victim after the rape, testified that the victim was bleeding extensively at the time of his examination. He further testified that her injuries were so severe that twenty-four stitches were required to close the wounds and that some of the victim's genital tissue had disintegrated. Dr. Newman testified that the victim was injured inside and outside her vagina and that these injuries were definitely caused by some type of penetration. Dr. Newman further testified that, because of these injuries, he examined the vaginal wall to determine if it also had been penetrated and might cause internal infection; however, he determined that the vaginal wall had not been penetrated.
We find, therefore, that any rational trier of fact could have found that the state proved defendant's identity as the perpetrator. The victim's injuries demonstrated that penetration occurred, and the severity of those injuries established the degree of force or violence. This assignment of error has no merit.
CONVICTION AFFIRMED.
NOTES
[1] In defendant's first assignment of error, he contends the trial court erred when it sustained the state's objection to testimony essential to a determination of probable cause for his arrest. The first argument in defendant's brief is concerned entirely with the denial of a motion to suppress his confession, which was designated as the second assignment of error. However, the caption of this argument indicates that the argument is addressed to both the probable cause for defendant's arrest and the motion to suppress the confession, presumably because the ruling relating to the determination of probable cause occurred during the hearing on the motion to suppress the confession. During that hearing, defense counsel attempted to obtain from one of the investigating officers a description of the vehicle used in the abduction of the victim. The state objected on the grounds that the description of the vehicle was not related to defendant's confession; and the court sustained the objection on the grounds of relevancy. The argument in which defendant's first assignment of error is nominally briefed does not mention that ruling; nor does it advance any reason by which the confession may have been tainted by the court's ruling. Defendant failed to present an argument relating to the issue, authority supporting his contention that the court erred in sustaining the state's objection, or a conclusion addressed to that claim. We find, therefore, that defendant's first assignment of error was not briefed on appeal and, accordingly, must be considered abandoned.
[2] Defendant implicitly contends that the confession was coerced because he was forced to endure almost three hours of continuous questioning. We do not find that the length of the interrogation constituted coercion. See State v. Fowlkes, 352 So.2d 208 (La.1977).
[3] In defendant's fourth assignment of error, he contends the trial court erred by denying his motions to exclude testimony about or photographs of a drop cloth found in the utility room. However, defendant briefed only the issue of the admissibility of the photographs of the drop cloth; thus, his objection to the admissibility of testimony about the drop cloth was abandoned, and we will not address it.
[4] The rules for the timeliness of a request for a subpoena in criminal cases of the Nineteenth Judicial District Court provide that "[b]oth the prosecution and defense should endeavor to request subpoenas not less than five days prior to trial." (Emphasis added.) However, no sanctions are provided for the failure to comply. See Criminal Rules, Rules of Court, Nineteenth Judicial District, Rule II, Section 7.