558 So.2d 1192 (1990)
STATE of Louisiana
v.
Donald SYLVAS.
No. 89 KA 0257.
Court of Appeal of Louisiana, First Circuit.
February 21, 1990.
Rehearing Denied April 25, 1990.
*1194 William R. Campbell, Jr., New Orleans and Walter P. Reed, Dist. Atty., Covington, for appellee.
William R. Ary, New Orleans, for appellant.
Before CARTER, SAVOIE and ALFORD, JJ.
SAVOIE, Judge.
Donald Sylvas was charged by bill of information with armed robbery and attempted armed robbery, violations of LSA-R.S. 14:64, and LSA-R.S. 14:27 and 14:64, respectively. After trial by jury, defendant was found guilty as charged on both counts. The state subsequently filed a multiple offender bill pursuant to LSA-R.S. 15:529.1 and, after a full hearing thereon, defendant was adjudicated a second felony offender. Accordingly, defendant was sentenced as a second offender to serve thirty-three years at hard labor without benefit of parole, probation or suspension of sentence for the armed robbery conviction. Further, defendant was sentenced to serve twenty-five years at hard labor without benefit of parole, probation or suspension of sentence for the attempted armed robbery conviction. The sentences were imposed to run concurrently.
Defendant has appealed, alleging the following assignments of error:
1. The trial court erred in denying the motion to suppress the taped confession.
2. The identification of the defendant was tainted and impermissibly suggestive.
3. Failure to move to suppress the identification amounted to a denial of due process and fair trial.
4. The court erred in allowing a handgun into evidence.
5. The verdict rendered by the jury on Count 1, viewed in the light most favorable *1195 to the state, does not reasonably permit a finding of guilt.
6. The trial court erred in accepting an ambiguous verdict.
7. The defendant was denied due process and a fair trial by receiving a sentence disparate with his co-defendant.
8. The prosecutor, who served as defendant's counsel in a prior criminal proceeding, faced a conflict of interest when the defendant testified.
9. The court erred in finding the defendant to be a multiple offender.
10. Appellant asks for a review of all errors patent on the face of the record.

FACTS
On the night of August 26, 1987, at approximately 10:30 p.m., an armed robbery occurred at the Junior Food Store on Bayou Liberty Road in St. Tammany Parish. Irma Parker, the clerk on duty that night, testified that she had come on duty at 10:00 p.m. While stocking one of the store's refrigerators, she heard the bell on the door ring. She turned to greet the customer and saw a black male, approximately five and one half feet in height and weighing approximately one hundred and thirty-five to one hundred and forty pounds, wearing a red ski mask walking towards her. She testified that the perpetrator was armed with a handgun and that he grabbed her by the arm and told her to look downward and to go behind the sales counter in order to open the cash register. Ms. Parker pressed the "no sale" button on the cash register, and the drawer opened. The perpetrator then took the money tray out of the cash register drawer and placed it on the sales counter. The victim then looked up at her assailant, and he placed the gun to her face and commanded her to look down. After rummaging through the money tray, the perpetrator asked Ms. Parker to open the safe; but she replied that she was unable to do so. The perpetrator then pointed towards the office door and asked "... what's that over there...." Ms. Parker replied that it was the office, and her assailant grabbed her and told her to go over there. Ms. Parker went into the office. The perpetrator asked her if there was any money in the office, to which she replied there was none. The perpetrator then grabbed Ms. Parker's purse from a counter top and told her to stay in the office, closing the door behind him.
Ms. Parker stated that the perpetrator took approximately $50.00 from the cash register, and also her wallet and car keys from her purse. Approximately five minutes after the robbery, Ms. Parker crawled out of the office and called the police.
On August 27, 1987, another armed robbery occurred at the Time Saver convenience store on Highway 190 in Slidell, Louisiana. Ms. Patricia Whitfield, the clerk on duty that night, testified that at approximately 10:00 p.m. that evening she heard the door of the store open. As soon as she looked up, a black male wearing a red ski mask ran into the store, jumped onto the sales counter, pointed a gun to her head and told her to open the cash register. Ms. Whitfield pressed the "no sale" button, but the cash register did not open. The perpetrator waited for a couple of seconds and told her again to open the cash register. Ms. Whitfield replied that she was trying to open it, but could not. She then reached around the back of the cash register in order to determine whether or not the perpetrator had inadvertently unplugged the machine when he jumped onto the counter. When she did so, the perpetrator counted aloud to three, jumped off of the counter and ran out of the store.
Ms. Whitfield testified that her assailant was approximately five feet, five inches tall, weighing approximately one hundred and twenty-five to one hundred and thirty pounds.
Detective Zig Swenson of the Slidell Police Department testified that on August 27, 1987, at approximately 10:00 p.m., a call was put out by the dispatcher that an armed robbery had been attempted at the Time Saver convenience store on Highway 190 in Slidell, Louisiana. Detective Swenson, while traveling towards the scene of the crime, noticed a red and white Oldsmobile Cutlass coming in the opposite direction at *1196 a high rate of speed with one headlight out. Detective Swenson watched the vehicle turn into Park Place Subdivision and decided to turn in behind it. Swenson called the license plate number into the dispatcher and learned that the vehicle was registered to an Eldridge Allen. Detective Swenson continued to follow the vehicle and noticed the passenger was continually glancing back at him in a furtive manner. The vehicle went through the subdivision, which is laid out in a loop-like, circular fashion with only one entrance and exit. Swenson had notified a backup unit to block the exit. As the suspect vehicle approached the exit, its occupants apparently saw that it was blocked by a police unit with its flashing lights on. Its driver attempted to flee at a high rate of speed, going back into the subdivision. Swenson gave chase, engaging his lights and siren. As the suspects attempted to flee, their vehicle was cut off by another backup police unit. The suspect vehicle had not come to a complete stop when the passenger exited the vehicle and ran between it and Detective Swenson's vehicle.[1] Swenson pursued the fleeing suspect and ordered him to halt, to no avail. Swenson was unable to apprehend the fleeing suspect.
At that time, other law enforcement officials had converged upon the stopped vehicle and had taken its driver, Eldridge Allen, into custody. Swenson testified that a red ski mask was found inside the vehicle.
Swenson further testified that on September 21, 1987, he came into contact with defendant herein at the Slidell Police Department Headquarters, after defendant had been brought in pursuant to an arrest warrant on an unrelated charge. Swenson stated that at approximately 9:00 p.m. that evening he was in his office when he heard the main door to the headquarters open and close. Swenson walked out and saw defendant sitting by a Detective Milan's desk. Swenson recognized defendant as the black male who fled from the suspect vehicle on the night of the attempted robbery of the Time Saver convenience store. Swenson ordered that defendant be booked with attempted armed robbery. He further ordered that defendant be advised of his rights and presented with an advice of rights form. Defendant subsequently gave a taped statement, wherein he implicated himself and Eldridge Allen in the crimes charged herein.

DENIAL OF MOTION TO SUPPRESS
By assignment of error number one, defendant submits that the trial court erred by denying his motion to suppress the taped confession. He claims that the state failed to prove the confession was voluntary and not influenced by duress. Specifically, defendant contends that the statement was involuntary because he was confronted by Detective Swenson, an alleged victim of defendant, and that, while handcuffed, he was pushed against the wall, kicked in the leg, and placed in fear for his wellbeing.
Before a confession or inculpatory statement may be introduced into evidence, the state has the burden of affirmatively proving, beyond a reasonable doubt, that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. LSA-R.S. 15:451. Additionally, the state must show that an accused who makes a statement or confession during custodial interrogation was first advised of his Miranda rights. State v. Worthy, 532 So.2d 541, 544 (La.App. 1st Cir.1988), writ denied, 538 So.2d 610 (La. 1989). Once a defendant alleges specific instances of police misconduct in reference to a statement, it is incumbent upon the state to specifically rebut each instance. State v. Worthy, 532 So.2d at 544. However, the admissibility of a confession is, in the first instance, a question for the trial judge; and his conclusions on the credibility and weight of the testimony relating to the voluntary nature of the statement will *1197 not be overturned unless they are not supported by the evidence. State v. Worthy, 532 So.2d at 544.
To establish the foundation for the admissibility of defendant's confession, the state presented the testimony of Detective Mike Moore of the St. Tammany Parish Sheriff's Office, and Detectives Cranford, Milan and Swenson of the Slidell Police Department. Detective Moore indicated that defendant was advised of his rights numerous times, including at his residence where he was initially picked up, upon arrival at the police department, and also before the taped statement was taken. Detective Moore testified that he was in the room when another detective read defendant his rights and that he saw defendant sign the statement form. Detective Moore further testified that defendant did not appear to be afraid or in fear of anyone or anything. Moore went on to state that defendant did not appear to be under any pressure or duress. Moore added that no one in his presence intimidated, menaced, threatened, or made inducements or promises to defendant in order to get a statement from him. Moore concluded by stating that Detective Swenson did not approach or touch defendant and that no one threw defendant against the wall or kicked defendant. Further, Detective Mike Moore's testimony was substantially corroborated by Detectives Swenson, Cranford and Milan.
Defendant testified on his own behalf and related a different series of events. He claimed that the law enforcement officials who arrived at his residence to execute the arrest warrant for the theft charge told him he was being arrested for an armed robbery. Defendant further claimed that, upon arrival at the Slidell Police Station, law enforcement officials told him that he was with Eldridge Allen on the night of the armed robbery. Defendant stated that Detective Swenson was about to walk out when another law enforcement official asked him, "[D]on't you know who we got sitting right here." Defendant stated that Swenson turned around, looked and said, "[Y]eh, that's the little ... that shot at me." Defendant testified that Swenson said he was going to get defendant for that incident.
Defendant further testified that he was in handcuffs and his feet were shackled. He stated that, when he stood up, Swenson pushed him against the wall and another law enforcement officer kicked him in the leg. Defendant testified that, instead of letting the law enforcement officials beat him up, he decided to give them a statement. Defendant claimed that the law enforcement officials kept telling him what he had done on the nights of the armed robberies in question and that he had no independent knowledge thereof.
Herein, the state presented evidence that defendant's confession was voluntary and not the result of threats, coercion, or intimidation. Defendant's claims of police mistreatment were rebutted in each instance. The trial court was faced with contradictory testimony which calls for a determination of the credibility of the witnesses. The version of events testified to by Detective Moore and the detectives from the Slidell Police Department indicates that defendant's taped statement was made freely and voluntarily and was not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. It further shows that defendant was given a Miranda warning prior to giving a statement. A determination on the credibility of witnesses is within the sound discretion of the trial court, is entitled to great weight and will not be disturbed unless clearly contrary to the evidence. State v. Worthy, 532 So.2d at 546.
After a careful review of the evidence presented, we find the trial court's denial of defendant's motion to suppress his taped confession is supported by the evidence; and, therefore, we find no error in the trial court's ruling.
FAILURE TO MOVE TO SUPPRESS IDENTIFICATION OF DEFENDANT AND IDENTIFICATION OF DEFENDANT
By assignment of error number three, defendant argues that the failure to move *1198 to suppress the identification by Detective Swenson at Slidell Police Headquarters amounted to a denial of due process and a fair trial. Also, by assignment of error number two, defendant urges that the identification was tainted and impermissibly suggestive. Initially, we address assignment of error number three.
Defendant submits that the failure to attempt to suppress the identification, which allegedly amounted to a denial of due process, can be raised by way of appeal pursuant to State v. Serrato, 424 So.2d 214 (La.1982).
LSA-C.Cr.P. art. 703 states in pertinent part as follows:
A. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained.
* * * * * *
C. A motion filed under the provisions of this Article must be filed in accordance with Article 521, unless opportunity therefor did not exist or neither the defendant nor his counsel was aware of the existence of the evidence or the ground of the motion, or unless the failure to file the motion was otherwise excusable. The court in its discretion may permit the filing of a motion to suppress at any time before or during the trial.
D. On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.
* * * * * *
... Failure to file a motion to suppress evidence in accordance with this Article prevents the defendant from objecting to its admissibility at the trial on the merits on a ground assertable by a motion to suppress.
* * * * * *
Further, LSA-C.Cr.P. art. 841 provides in pertinent part that:
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence....
The proper mechanism to challenge identification testimony is by way of motion to suppress. State v. Smith, 418 So.2d 515, 523 (La.1982); State v. Naas, 409 So.2d 535, 547 (La.1981), cert. denied, 457 U.S. 1119, 102 S.Ct. 2933, 73 L.Ed.2d 1332 (1982). However, not only did defendant fail to file a motion to suppress the identification testimony, but he also failed to offer a contemporaneous objection to that testimony. In the first instance, defendant in brief does not fully explain his contention under Assignment No. 3. Further, while disagreeing with defendant's reading of State v. Serrato, we nevertheless, will address the merits of defendant's assignment of error number two,[2] which effectively renders Assignment No. 3 moot.
*1199 A defendant attempting to suppress an identification must prove 1) that the identification was suggestive and 2) that there was a likelihood of misidentification in the identification procedure. State v. Collins, 546 So.2d 1246, 1257 (La.App. 1st Cir.1989). Moreover, even if it is established that the pretrial identification of the accused is the product of impermissible suggestion, the in-court identification is admissible if it has an independent basis. State v. Kennedy, 444 So.2d 301, 304 (La. App. 1st Cir.1983), writ denied, 446 So.2d 1228 (La.1984).
The factors to be considered in determining the reliability and existence of an independent source of identification include 1) the opportunity of the witness to view the criminal at the moment of the crime; 2) the degree of attention of the witness; 3) the accuracy of the prior description of the criminal; 4) the level of certainty of the identification; and 5) the elapsed time between the crime and the confrontation. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Kennedy, 444 So.2d at 304.
Detective Swenson testified that on the night of August 27, 1987, he saw a black male jump out of the suspect vehicle which he had been pursuing. Swenson stated that he did not get a good look at the accused until he ran between the suspect vehicle and Detective Swenson's police unit. Swenson testified that the suspect ran in front of the headlights of his police unit and that he gathered a profile look at the suspect. Swenson further stated that he ran behind the suspect and ordered him to halt, but the suspect did not stop. Further, Swenson's testimony demonstrates that his attention was directed towards the suspect and the events in progress on the night in question. Additionally, the record does not show any inaccuracies in the descriptions provided by Swenson. Indeed, Swenson positively identified defendant as the man who fled from him on the night in question. Finally, the in-court identification of defendant by Swenson was made only seven months after the incident in question; and Swenson's testimony indicated that he substantially recalled all of the details of the incident and that his memory was not dulled by the passage of time.
The totality of the circumstances does not indicate a substantial likelihood of misidentification of such a nature as to violate due process. The record amply demonstrates that the identification made by Swenson was based upon independent observation and memory; therefore, these assignments of error are without merit.

ADMISSIBILITY OF GUN
By assignment of error number four, defendant urges that the trial court erred in allowing into evidence the pistol allegedly used in the robberies. In his brief to this Court, defendant complains that the trial judge failed to admonish the jury to disregard the gun in the first instance. Defendant goes on to assert that he was convicted for the use of a gun that was never identified as being the weapon used in the robbery.
Notwithstanding defendant's foregoing arguments, the record is void of a contemporaneous objection to the alleged error. See LSA-C.Cr.P. art. 841. Nevertheless, we go on to address the merits of defendant's contentions.
On the morning of August 28, 1987, a .22 caliber handgun was found by a youngster in Park Place Subdivision. The youngster gave the gun to Ms. Pat Giardina, one of *1200 his neighbors. Ms. Giardina immediately called the police and the handgun was retrieved.
Although there is no direct evidence positively linking the handgun found in Park Place Subdivision on the morning of August 28th to the attempted armed robbery occurring on the night of August 27th, the record does contain testimony of two witnesses who indicated that a handgun was used in the robberies occurring at their places of employment. Furthermore, defendant's taped confession contains a full admission that he used a handgun in the commission of both crimes charged herein. Given these facts, coupled with defendant's failure to object to the state's alleged failure to lay a proper foundation for the admission of the handgun into evidence, we find the admission of the handgun into evidence to be harmless and of no effect upon the substantial rights of defendant herein. See LSA-C.Cr.P. art. 921. Accordingly, we find this assignment of error to be without merit.

INSUFFICIENCY OF THE EVIDENCE ON COUNT ONE
By assignment of error number five, defendant urges that the verdict returned by the jury on count one, viewed in the light most favorable to the state, does not reasonably permit a finding of guilt thereon. Defendant argues the state failed to submit enough evidence to sufficiently tie him to the armed robbery which occurred on the night of August 26, 1987.
We note that the proper procedural vehicle for raising the issue of sufficiency of the evidence is by motion for a post-verdict judgment of acquittal. LSA-C.Cr.P. art. 821. Despite defendant's failure to proceed properly, a reviewing court must consider the issue when briefed pursuant to an assigned error and determine whether or not the evidence meets the constitutional standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). State v. Britt, 510 So.2d 670, 672 (La.App. 1st Cir.1987). The standard of review of the evidence to support a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime charged beyond a reasonable doubt. State v. Captville, 448 So.2d 676, 678 (La.1984).
In order to convict defendant of armed robbery, the state must prove that defendant took something of value belonging to another, from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. LSA-R.S. 14:64; State v. Payne, 540 So.2d 520, 523 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989). The testimony of the victim is sufficient to prove the elements of an offense. State v. Payne, 540 So.2d at 524. A determination of the weight to be given to evidence is a question of fact for the trier of fact, not subject to appellate review. State v. Payne, 540 So.2d at 524.
Herein, two victims testified that, while on duty at different convenience stores in the Slidell area during the late night hours of August 26th and 27th, 1987, respectively, they were robbed at gun point by a black male wearing a red ski mask who was approximately five and one half feet tall and weighed approximately one hundred and thirty to one hundred and thirty-five pounds. Further, Detective Swenson gave the description of a suspect who fled from a vehicle, wherein a red ski mask was found, which matched the physical attributes of defendant herein. Finally, the defendant gave a taped statement where he fully confessed to his participation, and the details thereof, in both crimes charged herein.
Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have concluded beyond a reasonable doubt that the state proved all the elements of armed robbery and that the defendant committed the offense charged herein. Therefore, this assignment of error lacks merit.

AMBIGUOUS VERDICT
In assignment of error number six, defendant argues that the trial court erred in *1201 accepting an ambiguous verdict. Defendant points out that the jury returned two verdicts in this case. Typed on both verdict response pages is the following:
We, the jury, find the defendant, Donald Sylvas Guilty.
Defendant asserts that, although the jurors were polled, the ambiguity was not cured. Defendant points out that the jury requested additional instructions on the law of accomplices, but that the trial judge went on to explain only the law on principals and not on accessories after the fact. Further, defendant asserts that, in polling the jury, the trial judge did not ask each juror if he or she found the defendant guilty as charged; he merely asked, "Is this your verdict?"
There is no formal requirement as to the language of the verdict, except that it shall clearly convey the intention of the jury. LSA-C.Cr.P. art. 810. Assuming, arguendo, that the verdict of the jury in this case was ambiguous, nevertheless the intention of the jury may be determined by reference to the pleadings, the evidence, the admissions of the parties, the instructions, and the forms of the verdicts submitted. State v. Vincent, 387 So.2d 1097, 1100 (La.1980).
The bill of information specifically charged defendant with armed robbery and attempted armed robbery. Further, when charging the jury, the trial judge read all specific statutes applicable to the case, giving the jury a complete summary thereof and furnishing them with a list of responsive verdicts. The jury's verdict stated: "We, the jury, find the defendant Guilty." These verdicts were correct in form and responsive to the bill of information charging defendant with the crimes of armed robbery and attempted armed robbery. See LSA-C.Cr.P. art. 811. Since the verdicts returned clearly conveyed the intention of the jury, the trial judge did not err in accepting the verdicts of "guilty." See LSA-C.Cr.P. art. 814; State v. Louis, 496 So.2d 563, 567 (La.App. 1st Cir.1986). Accordingly, this assignment of error is without merit.

EXCESSIVE SENTENCE
In assignment of error number seven, defendant argues that he was denied due process and a fair trial by receiving sentences disparate with his co-defendant. Defendant contends that his co-defendant was sentenced to a mere five years on both counts, while he was sentenced to thirty-three and twenty-five years respectively, thus denying him due process and a fair trial.
Article I, § 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. Excessiveness of sentence is a question of law which is reviewable. See State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence may be excessive either by reason of its length or because the circumstances warrant a less onerous sentencing alternative. State v. Payne, 540 So.2d at 524. In other words, a sentence may be both within the statutory limits and constitutionally excessive. A sentence is excessive when it is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. To determine whether a penalty is grossly disproportionate to the crime, the court considers the punishment and the crime in light of the harm to society and whether or not the penalty is so disproportionate as to shock our sense of justice. A trial court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by it should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Payne, 540 So.2d at 524.
A trial court's reasons in imposing sentence, as required by LSA-C.Cr.P. art. 894.1, are an important aid to this Court when reviewing a sentence alleged to be excessive. The trial court need not recite the entire checklist found in LSA-C.Cr.P. art. 894.1; however, the record must reflect that the court adequately considered these guidelines. Even when the trial court has not complied with LSA-C.Cr.P. art. 894.1, this Court need not remand the case for resentencing, unless the sentence *1202 imposed is apparently severe in relation to the particular offender or the offense committed. State v. Payne, 540 So.2d at 524.
Additionally, we note that there is nothing in the law that requires a sentencing judge to treat co-defendants equally. State v. Merchant, 490 So.2d 336, 342 (La. App. 1st Cir.), writ denied, 496 So.2d 326 (La.1986). All defendants are to be afforded the same sentencing consideration, but no particular results are compelled. Results are measured only against the requirement that sentences not be excessive. State v. Day, 414 So.2d 349, 352 (La.1982). Sentencing disparity among co-defendants is only a factor to be considered along with other appropriate considerations, when there is no reasonable basis in the record for the disparity. State v. Quimby, 419 So.2d 951, 962 (La.1982). Moreover, sentencing disparities are inherent in a system where punishment is tailored to fit the defendant and the crime. State v. Day, 414 So.2d at 352.
As a habitual offender, whose second felony conviction was for armed robbery, defendant's sentencing exposure was imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence for a minimum of thirty-three years and a maximum of one hundred ninety-eight years. LSA-R.S. 14:64 and 15:529.1 A(1). Herein, defendant was sentenced to imprisonment at hard labor, without benefit of parole, probation or suspension of sentence for a term of thirty-three years for the armed robbery conviction. Further, defendant was sentenced to serve twenty-five years at hard labor without the benefit of parole, probation or suspension of sentence for the attempted armed robbery conviction. The sentences were imposed to run concurrently.
In imposing sentences, the trial court noted that defendant had previously been convicted and sentenced to three years at hard labor for simple burglary. The court also noted that defendant committed a crime while armed with a dangerous weapon and placed two victims in fear for their lives. The court noted that the victims were very much concerned that they were going to be killed during the course of the armed robberies. The court concluded by saying that the message was clear that defendant could not commit these crimes and feel as if he could get away with very short sentences. The trial court took defendant's age into consideration as a possible mitigating factor, but apparently found no other mitigating factors.
Assuming, arguendo, that the trial court failed to adequately comply with the guidelines contained in LSA-C.Cr.P. art. 894.1, the sentences imposed are not apparently severe in relation to defendant or the offenses committed. Herein, while armed with a dangerous weapon and accompanied by a co-perpetrator, defendant confronted two victims. Although the victims apparently were not physically harmed, defendant's conduct certainly imposed a serious threat to their physical well-being and perhaps their lives. Under the circumstances of this case, we are unable to say the trial court erred in sentencing defendant to thirty-three years imprisonment at hard labor, without benefit of parole, probation or suspension of sentence, to run concurrently with a sentence of twenty-five years at hard labor, also without benefit of parole, probation or suspension of sentence. Accordingly, we do not find defendant's sentences to be excessive; and therefore, find this assignment of error to be meritless.

PROSECUTOR'S CONFLICT OF INTEREST
By assignment of error number eight, defendant contends that a conflict of interest arose when he testified at the motion to suppress and the trial due to the fact that the assistant district attorney served as his defense counsel in a prior criminal proceeding. Defendant points out that he testified at both the motion to suppress and at trial, where he was subject to cross-examination by his previous counsel. Defendant further notes that the prior conviction formed the basis of the multiple offender bill. Defendant requests a new trial, or alternatively, that the matter be remanded to the trial court to determine whether or not the interest of justice would *1203 be best served by the granting of a new trial pursuant to LSA-C.Cr.P. art. 851(5).
LSA-C.Cr.P. art. 681 provides:
A district attorney may recuse himself, whether a motion for his recusation has been filed or not, in any case in which a ground for recusation exists. A motion to recuse the district attorney shall be in writing and shall set forth the grounds therefor. The motion shall be filed in accordance with Article 521, and shall be tried in a contradictory hearing. If a ground for recusation is established the judge shall recuse the district attorney.
The term "district attorney" includes assistant district attorneys, except where the context clearly indicates otherwise. See LSA-C.Cr.P. arts. 8 and 934(5).[3] Herein, defendant failed to file a written motion to recuse the prosecuting attorney; therefore, there is nothing for us to review. Moreover, LSA-C.Cr.P. art. 853 requires that a motion for new trial be filed and disposed of before sentencing.
Additionally, when a motion for a new trial is based on the interest of justice, pursuant to LSA-C.Cr.P. art. 851(5), there is nothing for this Court to review because granting of a new trial under 851(5) is purely discretionary with the trial court.
In any event, we note the following: LSA-C.Cr.P. art. 681 states in part that, "[a] district attorney may recuse himself... in any case in which a ground for recusation exists." LSA-C.Cr.P. art. 680, states that, "[a] district attorney shall be recused when he ... [h]as been employed or consulted in the case as attorney for the defendant before his election or appointment as district attorney." However, the Louisiana Supreme Court has expanded the requirements of Art. 680 by stating that the ethical rules imposed a broader gloss on the statutory requirement by providing for recusation when the district attorney was previously employed in "a substantially related matter." State v. Allen, 539 So.2d 1232, 1234 (La.1989). Defendant failed to file a motion to recuse the assistant district attorney in the case at hand. Nevertheless, the assistant district attorney may have had an ethical duty to recuse himself from this case, and his failure to do so possibly constituted an abuse of the discretion given to him under LSA-C.Cr.P. art. 681. However, this issue would be more properly raised by an application for post-conviction relief filed in the district court where a full evidentiary hearing may be conducted. See, State v. Anderson, 536 So.2d 456, 458 (La.App. 1st Cir.1988). Accordingly, this assignment of error is meritless.

HABITUAL OFFENDER
By assignment of error number nine, defendant contends that the trial court erred in finding him to be a multiple offender. Defendant argues that the state failed to meet the standards of LSA-R.S. 15:529.1(F).
To prove defendant a habitual offender, the state must prove, among other things, that defendant was convicted of a prior felony. State v. Moten, 510 So.2d 55, 63 (La.App. 1st Cir.), writ denied, 514 So.2d 126 (La.1987). Prima facie proof of a prior felony conviction may be established by compliance with LSA-R.S. 15:529.1(F). State v. Moten, 510 So.2d at 63. However, LSA-R.S. 15:529.1(F) is not the exclusive method of proving a prior felony conviction; any other competent evidence may be used to establish such proof. State v. Moten, 510 So.2d at 63.
At the habitual offender trial herein, Joan Scanlan of the Louisiana Department of Corrections testified that she was defendant's parole officer after his conviction on a simple burglary charge. Scanlan identified defendant at the hearing. Further, at the hearing, the state attempted to introduce defendant's original fingerprint cards kept on file by the Louisiana Department of Corrections. Defendant objected to the introduction of these cards on the basis that there were no certifications *1204 thereon and that the state should be compelled to introduce fingerprint cards from the records of the State Police, and not the Department of Corrections. Defendant's objection was overruled by the trial court. The state further introduced certified copies of the following: an extract of the minute entry of the sentencing on defendant's prior conviction for simple burglary; the minute entry of defendant's guilty plea to simple burglary on March 12, 1984; and the bill of information charging defendant with violation of simple burglary on August 22, 1983. Defendant did not object to the introduction of these documents.
Additionally, Otho B. Stubbs, Jr., of the St. Tammany Parish Sheriff's Department was qualified as a fingerprint identification expert. He testified that the fingerprints on the exhibits introduced by the state matched the fingerprints of defendant taken at the habitual offender proceeding.
In accord with the foregoing facts, the state proved that defendant committed a felony on August 22, 1983, and that, less than five years after his sentence thereon had been completed, defendant committed the instant felony. Moreover, the state established that the defendant, who was convicted of the prior felony, was in fact defendant herein. Given the above circumstances, we find that the state met its burden of proof under LSA-R.S. 15:529.1. Accordingly, this assignment of error is without merit.

PATENT ERROR REVIEW
In his brief to this Court, defendant requests a patent error review. Defendant does not cite any specific patent errors; rather, he merely requests that this Court review the record for errors patent, which this Court would have done in any event. Under LSA-C.Cr.P. art. 920(2), we are limited in our review to errors discoverable by a mere inspection of the pleadings and the proceedings without an inspection of the evidence. After a careful review of the record in these proceedings, we have found no patent errors which would require that the instant conviction and sentence be reversed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Testimony was adduced at the hearing on the motion to suppress that the suspect who fled from the pursued vehicle fired two shots at Detective Swenson, with the primers being detonated but the bullets not actually coming out of the barrel of the gun.
[2] In State v. Serrato, defendant filed a pretrial motion in which he argued that his confession and other inculpatory statements were inadmissible since they were made under the influence of fear, duress, intimidation and improper psychological coercion. On appeal, defendant therein asserted additional grounds to suppress the confession in that it was the product of an illegal arrest and was procured in violation of defendant's right to counsel. The Louisiana Supreme Court stated that defendant's failure to address these two grounds in his pretrial motion did not preclude him from raising them on appeal. The court went on to state that in State v. Roach, 322 So.2d 222, 226 (La.1975), it had stated that, based on the former language of LSA-C.Cr.P. art. 703(C), their scope of review should be limited to those grounds on which a motion to suppress is based. The court went on to note, however, since the Roach decision, LSA-C.Cr.P. art. 703 had been amended to shift the burden of proof on a motion to suppress an oral confession or other inculpatory statement. The court noted that, prior to the 1978 and 1980 amendments to LSA-C.Cr.P. art. 703, the burden of proof rested with the defendant on a motion to suppress oral confessions or other statements and with the state to prove the admissibility of written inculpatory statements. Now the state has the burden of proving the admissibility of both written and oral inculpatory statements by the defendant. See LSA-C.Cr.P. art. 703(D).

In State v. Roach, the Supreme Court concluded that new grounds could not be raised after the hearing on the pretrial motion since the burden of proof to suppress an oral confession rested with the defendant. The court went on to note, however, that since LSA-C.Cr.P. art. 703(D) has placed the burden of admitting both oral and written confessions on the state, an appellate court can now properly review additional grounds to suppress a confession which are fully argued later at trial on the merits or at a hearing on a motion for new trial. The court in Serrato concluded that, in view of the fact that defendant submitted two additional grounds to suppress in his motion for a new trial, they were properly before that court.
While pretermitting a definitive ruling thereon, it would appear that the amendment to LSA-C.Cr.P. art. 703(D), which was addressed in State v. Serrato, applies only to confessions or statements made by the defendant, and not to identification testimony. See LSA-C.Cr.P. art. 703.
[3] See also State v. Gray, 526 So.2d 1268, 1271 (La.App. 3rd Cir.), writ denied, 531 So.2d 468 (La.1988). But see State v. Loera, 530 So.2d 1271, 1275 (La.App. 2nd Cir.1988), writs denied, 536 So.2d 1252 (La.1989).