569 So.2d 147 (1990)
STATE of Louisiana
v.
Olidas R. SANFORD.
No. 89 KA 1730.
Court of Appeal of Louisiana, First Circuit.
October 16, 1990.
*149 Bryan Bush, Dist. Atty., Baton Rouge by Don Wall, Asst. Dist. Atty., for plaintiff/appellee.
Office of the Public Defender, Baton Rouge, for defendant/appellant.
Before SAVOIE, CRAIN and FOIL, JJ.
SAVOIE, Judge.
Olidas R. Sanford was charged by bill of information with armed robbery, a violation of LSA-R.S. 14:64.[1] After trial by jury, defendant was found guilty as charged and sentenced to serve twenty-five years at hard labor without benefit of parole, probation or suspension of sentence. Defendant has appealed, alleging the following assignments of error:
1. The defendant urges on appeal that the trial court committed error when it denied the defense motion to suppress.
2. The defendant urges on appeal that the trial court committed error when it denied the defense motion for a mistrial.
3. The defendant urges on appeal that the trial court committed error when it adjudged him guilty based upon insufficient evidence.
4. The defendant urges on appeal that the trial court committed error when it imposed an excessive sentence and failed to comply with the sentencing guidelines set forth in Louisiana Code of Criminal Procedure Art. 894.1.
In his brief to this Court, defendant expressly abandoned assignment of error number three; therefore, it is not considered herein.

FACTS
At approximately 4:00 a.m. on the morning of May 3, 1988, an armed robbery occurred at a Super Fresh grocery store located in Baker, Louisiana. DeLaune Hamilton (the victim herein), the co-manager on duty at that time, was stocking a shelf when a black male appeared on the aisle and asked: "Who's the manager?" The man had a bandana covering his face; he rushed to Hamilton, grabbed him by the collar, and started to drag him down the aisle. Hamilton then saw another man standing at the end of the aisle wearing a trench coat. This man pulled the jacket open and pointed a sawed-off shotgun at Hamilton. The victim was ordered to go into the manager's booth and to open the safe. One of the perpetrators then took approximately seven thousand dollars in cash from the safe and put it into a paper bag. Hamilton was then ordered to remain lying on the floor, and the two men fled. Thereafter, Hamilton summoned law enforcement officers to the scene of the crime.
On June 15, 1988, Sgt. David Almond of the Baker Police Department received a phone call from a detective with the Baton *150 Rouge City Police, informing him that they had a suspect of the instant armed robbery in custody. Almond, along with a Captain Funderburk, went to the Baton Rouge City Police Detectives Office where defendant gave them a taped statement describing his and his cohort's participation in the crime charged herein.

DENIAL OF DEFENDANT'S MOTION TO SUPPRESS TAPED CONFESSION
In his first assignment of error, defendant submits that the trial court committed error when it denied his motion to suppress a taped confession. Therein, defendant moved to suppress any oral, written and/or video-taped or recorded confessions which he may have made. Defendant did make several inculpatory statements on the night of his arrest, one of which was tape-recorded by the law enforcement officials from the Baker City Police Department. This taped confession was introduced at trial. However, in his brief to this Court, defendant argues the promises made by Detective Greg Phares of the Baton Rouge City Police induced him into inculpating himself. Defendant specifically alleges Phares informed him that his cohorts were "singing like birds" concerning defendant's involvement in an unrelated robbery and that defendant could save himself by making a statement. Defendant also avers that Phares offered to talk to the district attorney's office on defendant's behalf concerning probation or a lenient sentence and a possible bond reduction. Finally, defendant asserts that the detective offered to set up a day where defendant's mother would be able to visit with defendant at the detective's office instead of parish prison.
In his brief to this Court, defendant asserts that confessions obtained by any direct or implied promises, however slight, or by the exertion of any improper influence, are involuntary and inadmissible as a matter of constitutional law. This rule, while oft cited, has not been liberally applied. See State v. Lewis, 539 So.2d 1199, 1201 (La.1989). Instead, a review of the totality of the circumstances under which the statement is given is still required; any inducement offered to the defendant is but one fact, albeit an important one, in the analysis. State v. Lewis, 539 So.2d at 1201-1202.
Before a confession or inculpatory statement may be introduced into evidence, the State has the burden of affirmatively proving, beyond a reasonable doubt, that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. LSA-R.S. 15:451. Indeed, an essential prerequisite for suppressing a statement on voluntariness grounds is misconduct or overreaching by the police. State v. Schrader, 518 So.2d 1024, 1027 (La.1988). Additionally, the State must show that an accused who makes a statement or confession during custodial interrogation was first advised of his Miranda rights. State v. Sylvas, 558 So.2d 1192, 1196 (La.App. 1st Cir.1990). Once a defendant alleges specific instances of police misconduct in reference to a statement, it is incumbent upon the State to specifically rebut each instance. State v. Sylvas, 558 So.2d at 1196.
However, a statement by a law enforcement officer, prior to a confession, that cooperation would be communicated to possible prosecuting authorities, is not a sufficient inducement to render a subsequent confession inadmissible. State v. Peters, 546 So.2d 829, 832 (La.App. 1st Cir.), writ denied, 552 So.2d 378 (La.1989).
Additionally, the admissibility of a confession is, in the first instance, a question for the trial judge; his conclusions on the credibility and weight of the testimony relating to the voluntary nature of the statement will not be overturned unless they are not supported by the evidence. State v. Sylvas, 558 So.2d at 1196-1197.
Detective Greg Phares testified at the hearing on defendant's motion to suppress that he had issued a warrant for defendant's arrest in connection with an unrelated armed robbery which occurred at a bank. On June 15, 1988, Phares was contacted by Deputy Arkel Merritt of the East Feliciana Parish Sheriff's Office and informed that they had defendant in custody *151 pursuant to that warrant. Phares and Sgt. Pat Englade, also of the Baton Rouge City Police Department, traveled to the East Feliciana Parish Sheriff's Office in Clinton, Louisiana, in order to take custody of defendant. After arriving, Phares and Englade, along with Deputy Merritt, went into a room where defendant was being held, advised defendant of his rights, had defendant execute a waiver of rights form and obtained a statement from defendant concerning an unrelated armed robbery which occurred at a Hibernia Bank. Afterwards, Phares and Englade transported defendant back to Baton Rouge in order to question him further and book him into jail. According to Phares, defendant was readvised of his rights upon arrival at the Detective Division of the Baton Rouge City Police Department and also executed another waiver of rights form. Phares suspected that the same persons who were involved in the robbery which occurred at the Hibernia Bank were also involved in other robberies which Phares was investigating at that time. Phares relayed his suspicions to defendant; defendant then told Phares that he had also been involved in some of those other armed robberies. Phares then contacted Officer Dave Almond and Captain Funderburk of the Baker City Police Department, who came to the Baton Rouge City Police Detective Division and, after advising defendant of his rights and receiving a waiver thereof, obtained a taped statement from defendant concerning the crime charged herein.
While on direct examination at the hearing on the motion to suppress, in response to questioning by the prosecutor as to whether or not he or anyone in his presence made any promises or offers of leniency to defendant, Phares responded that the only thing he told defendant was that the district attorney's office would be made aware of the fact that defendant had cooperated by giving a statement. Phares also stated that no one threatened defendant, nor did defendant ask for an attorney at any time before, during, or after the questioning. Further, defendant never asked that the questioning be stopped.
On cross-examination, Phares admitted that it was possible that he told defendant during the interrogation that one of his cohorts from one of the other robberies had confessed and thus implicated defendant therein. Phares also admitted that it was possible that he gave defendant his phone number and told defendant to tell his mother to call the detective. Phares further confirmed that, several days after defendant's arrest, defendant's mother, sister, and girlfriend were allowed to have a private visit with defendant at the detective's office. Phares stated that this request came from defendant's family.
Defendant also testified at the hearing on the motion to suppress. He stated that, after being arrested by Deputy Merrill in East Feliciana, he was placed into a holding cell for approximately two hours. Afterwards, he was taken into Deputy Merrill's office to speak with Det. Phares and Det. Englade of the Baton Rouge City Police Department. Defendant stated that the detectives asked him questions concerning a bank robbery, of which he initially denied any knowledge. The detectives then allegedly told defendant that two of his cohorts were "singing like birds" and that he could save himself by making a statement. Defendant then gave the detectives a statement concerning the Hibernia Bank robbery. However, that robbery is the only one about which defendant claims to have spoken while in Clinton.
After arriving in Baton Rouge, defendant was placed in a small room alone for approximately twenty to twenty-five minutes when five to six detectives came into the room. These detectives began asking defendant about various armed robberies. Detective Phares allegedly told defendant that, if he helped in an investigation against one Julius Thomas in an unrelated robbery, Phares would help defendant. According to defendant, Phares did not specifically state how he could help defendant; rather, Phares stated that the only thing he could do was talk to the district attorney's office on defendant's behalf.
Defendant further claimed that, before he began to answer questions concerning *152 his participation in various robberies under investigation, he first asked to speak with an attorney and also to speak with his mother. Defendant explained that Det. Phares told him that he would not need a lawyer if he cooperated and that Phares would arrange for defendant's mother to be allowed to visit with defendant at the detective's office. Defendant also indicated that Phares asked him to cooperate with Officers Almond and Funderburk and the resultant taped statement implicated defendant in the crime charged herein.
The State called Det. Pat Englade to testify on rebuttal at the hearing on defendant's motion to suppress. Englade stated that he was present at all times when Phares spoke with defendant. Englade claims defendant never asked for an attorney. He further claims that he never heard Phares promise defendant that he would arrange for defendant to have a special visit with his family. Englade's testimony, however, was conspicuously absent of any references to promises which Phares may have made to defendant regarding Phares' intention to make a favorable statement to the district attorney's office on defendant's behalf.
For the following reasons, we cannot say that the trial court erred in denying defendant's motion to suppress. First, a promise by a police officer to communicate to the district attorney's office a defendant's cooperation is not a sufficient inducement to render a subsequent confession inadmissible. State v. Peters, 546 So.2d at 832. Moreover, although it does appear that Det. Phares misled defendant into believing that one of his cohorts had confessed and thus inculpated defendant, the record does reflect that several of defendant's cohorts were in police custody in Baton Rouge when Phares and Englade arrived in Clinton. Nevertheless, the fact that police misrepresent statements by codefendants is, while relevant, insufficient to make an otherwise voluntary confession inadmissible. See Frazier v. Cupp, 394 U.S. 731, 739, 89 S.Ct. 1420, 1425, 22 L.Ed.2d 684 (1969). Finally, although defendant was allowed to meet with his family in a hospitable setting several days after his arrest, there is substantial dispute as to whether or not the allowance of this meeting was a condition precedent to defendant's confession.
Herein, the trial court was faced with contradictory testimony regarding whether or not defendant sought advice of counsel before giving a statement, whether or not defendant was promised a special meeting with his family as an inducement to obtain his confession, and whether or not one of his cohorts had implicated defendant. The State presented evidence that defendant did not ask for an attorney prior to questioning, that Det. Phares did not promise to get defendant's bond reduced, that no one told defendant he would be entitled to probation for giving a confession, and that no one promised defendant anything in return for giving a confession. Such contradictions call for a determination of the credibility of witnesses, which is within the sound discretion of the trial court. Furthermore, the trial court's findings on these matters are entitled to great weight, and will not be disturbed on appeal unless clearly contrary to the evidence. State v. Sylvas, 558 So.2d at 1197. There was no dispute, however, that defendant was advised of his Miranda rights on each occasion before giving inculpatory statements and that Det. Phares merely agreed to make defendant's cooperation known to the district attorney's office.
After a careful review of the totality of the circumstances, we find that the trial court's denial of the defendant's motion to suppress his taped confession is supported by the evidence; therefore, we find no error in the trial court's ruling.

DENIAL OF MOTION FOR MISTRIAL
Through his second assignment of error, defendant argues that the trial court committed error when it denied his motion for a mistrial after a state witness made an allegedly prejudicial statement in the presence of the jury.
The record reflects that, during defense counsel's cross-examination of Det. Greg Phares, the following colloquy occurred:

*153 DEFENSE COUNSEL: Do you know what a motion to suppress a confession is?
PHARES: Yes, ma'am.
DEFENSE COUNSEL: And what is that?
PHARES: It's a motion that the defense attorney files that alleges that the confession was somehow improper.
DEFENSE COUNSEL: Now, do you
PHARES: The same motion you filed in this that was denied.
DEFENSE COUNSEL: Objection, Your Honor. Could we retire the jury?
THE COURT: Let's retire the jury.
The jury being removed, defendant moved for a mistrial.
Upon the request of the defendant or the State, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the State, in the mind of the jury, when the remark or comment is made by a witness or person other than a judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of article 770. La.C.Cr.P. art. 771(2). In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial. La.C.Cr.P. art. 771. However, mistrial is a drastic remedy and, except in instances in which mistrial is mandatory, is warranted only when a trial error results in substantial prejudice to the defendant depriving him of a reasonable expectation of a fair trial. Although a potentially prejudicial remark by an experienced police officer should be viewed with concern as to fairness of the trial, the decision as to the necessity of granting a mistrial is within the sound discretion of the trial court. State v. Burge, 498 So.2d 196, 205 (La.App. 1st Cir.1986).
In his brief to this Court, defendant submits that a police officer is closely related to the district attorney in the presentation of the prosecutor's case and, therefore, a prejudicial remark by an experienced police officer should be viewed with considerable concern, especially if the remark was precipitated by or should have been anticipated by the district attorney. Accordingly, defendant contends that the trial court abused its discretion by merely admonishing the jury to disregard the remark rather than granting the motion for a mistrial.
Herein, Det. Phares' response to defense counsel's questioning could in no way have been precipitated or anticipated by the district attorney. Additionally, defendant fails to specifically explain in his brief to this Court exactly how he was prejudiced by Phares' response. Nevertheless, the trial court's admonishing of the jury was sufficient to cure any possible prejudice to defendant. Hence, this assignment of error is without merit.

EXCESSIVE SENTENCE
By way of assignment of error number four, defendant avers that the trial court committed error when it imposed an excessive sentence and failed to comply with the sentencing guidelines set forth in La.C. Cr.P. art. 894.1. Defendant contends that the trial court based its decision largely upon his past and failed to adequately review the factors that mitigated in favor of a less onerous sentencing alternative. Two factors which defendant cites as mitigating in his favor are his youth and the fact that no one was injured in the instant robbery.
Art. 1, § 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. Excessiveness of sentence is a question of law which is reviewable. State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence may be excessive simply by reason of its length or because circumstances warrant a less onerous sentencing alternative. State v. Payne, 540 So.2d 520, 524 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989). In other words, a sentence may be both within the statutory limits and constitutionally excessive. State v. Sepulvado, 367 So.2d at 767. A sentence is excessive when it is grossly out of proportion to the severity of the *154 offense or nothing more than the needless and purposeless imposition of pain and suffering. To determine whether a penalty is grossly disproportionate to the crime, the court considers the punishment and the crime in light of the harm to society and whether or not the penalty is so disproportionate as to shock our sense of justice. The trial court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by it shall not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Payne, 540 So.2d at 524.
A trial court's reasons in imposing sentence, as required by La.C.Cr.P. art. 894.1, are an important aid to this Court when reviewing a sentence alleged to be excessive. The trial court need not recite the entire checklist found in Art. 894.1; however, the record must reflect that the court adequately considered these guidelines. Even where the trial court has not complied with La.C.Cr.P. art. 894.1, this Court need not remand the case for resentencing, unless the sentence imposed is apparently severe in relation to the particular offender or the offense committed. State v. Payne, 540 So.2d at 524.
Having been found guilty of armed robbery, defendant's penalty exposure was imprisonment at hard labor for not less than five years nor more than ninety-nine years without benefit of parole, probation or suspension of sentence. LSA-R.S. 14:64 B. Defendant herein was sentenced to serve twenty-five years at hard labor without benefit of parole, probation, or suspension of sentence.
Before imposing sentence, the trial court ordered and reviewed defendant's presentence investigation report. The court found that defendant had led a life filled with criminal activity dating back to his juvenile years. It noted that defendant had been arrested at least seven times as a juvenile. It further noted that in 1980 defendant was arrested for aggravated assault and three counts of simple battery. He was convicted of aggravated assault and two counts of simple battery, and was sentenced to serve a number of months which were subsequently suspended. The court also took note that in March of 1981 defendant was arrested for aggravated battery and aggravated assault, and in December of 1981 defendant was arrested for second degree battery. It further indicated that in February of 1986 defendant pled guilty to simple battery and received a ninety-one day suspended sentence. It also noted that in May of 1986 defendant was convicted of second degree battery and received a sentence of two years with the Department of Corrections. Finally, defendant was arrested for the instant armed robbery, along with five other counts of armed robbery.
The trial court specifically noted that all of the above offenses were crimes against the person and that defendant has shown a propensity for violent conduct. It further indicated that it heard evidence at trial about how the instant armed robbery occurred and noted that armed robbery is one of the most heinous offenses that one could force another person to endure. The trial court noted that the wielding of a shotgun, forcing people to crawl on their knees, and the imposition of emotional trauma which defendant and his cohort inflicted upon the victims in the instant case is the sort of offense which warrants that the perpetrator "pay for it dearly." The trial court also noted that defendant was twenty-three years old, had already been placed into the Department of Corrections, and had apparently not learned his lesson.
In light of the trial court's reasons given in sentencing defendant herein, we cannot say that the punishment imposed was severe in relation to this defendant and the offense which he committed. Accordingly, this assignment of error lacks merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Sanford was billed along with William C. Collins; however, our considerations herein involve only those proceedings relating to Sanford.